## MATTHEW FALOON ET AL.
### v.
## R. S. McINTYRE ET AL.

1. VOLUNTARY CONVEYANCE.—A voluntary conveyance for the benefit of the grantor, when it stands in the way of collecting a debt owed by the grantor at the time of the conveyance, may be set aside by bill in chancery, but such a conveyance will not be set aside for the benefit of a subsequent creditor or to support a subsequent voluntary conveyance.

2. CHANCERY.—Where there is equal equity, the court will not disturb the legal status of the contending parties.

ERROR to the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding. Opinion filed December 4, 1885.

Mr. THOMAS F. TIPTON, for plaintiffs in error.

Messrs. FIFER & PHILLIPS, for defendants in error.

WALL, P. J. The plaintiff in error, Matthew Faloon, filed his bill in chancery against the defendants in error, R. S. Mc-Intyre and others, to set aside a conveyance in the nature of a deed of trust, executed to said McIntyre by Joshua R. Fell, in order that the real estate in said deed mentioned might be subjected to the operation of a judgment held by said Faloon against said Fell.

The cause was heard by the circuit court on bill, answer,

replication and proofs, and a decree was entered dismissing the bill. The record is brought to this court by writ of error, and we are asked to reverse the decree. It appears that Faloon married the daughter of said Fell, and that shortly after the marriage said Fell and his wife went to the house of Faloon and remained there most of the time for a period of about twenty years. This arrangement seems to have been mainly at the instance of Mrs. Faloon, and seems to have been to some extent agreed upon before the marriage.

Mrs. Faloon was the youngest child of Fell and his wife, and as her parents were then quite old she was reluctant to leave them alone. It may be stated that during the entire period the Fells were in the house of Faloon they were well treated and cared for, in sickness and in health, and this, so far as Mrs. Faloon was concerned, was inspired, no doubt, by a worthy, filial disposition, in which she was never lacking. In April, 1881, the Fells left the house of Faloon and went to their own house, and then it appears that Faloon made a charge upon his book against said Fell for boarding, nursing, medical attention, etc., during said period, amounting to $7,764, but it does not appear that there was ever any understanding between him and Fell that there was to be charge for said items, or that this account was ever shown to Fell or agreed to by him.

Upon this point it may be said here, as well as later on, that from the near relationship of the parties the law would not necessarily imply promise on the part of Fell to pay for the services so rendered, and that in the absence of an express understanding to that effect, Faloon could not recover therefor at law. There is nothing in the evidence to justify the conclusion that there was any such undertaking, or any understanding of that sort up to time this charge was entered by Faloon in his book. On the contrary, we think there is much, aside from the relationship of the parties, to rebut such a theory. It is shown that Fell must have, in some way, disposed of considerable sums of money while he lived with Faloon, and that at different times, and on different accounts, Faloon was admitted to be Fell's debtor. These, and other circumstances not nec-

essary to be stated in detail, are quite convincing proof that Faloon was, when he made this charge on his book, not in a position where he could have enforced it as a legal demand against Fell. About one year later, on May 5, 1882, the deed of trust in question was executed by Fell and wife to McIntyre. This deed conveys the property in dispute to said McIntyre in trust, to collect the rents, pay taxes, repairs, etc., and the balance to pay to said Fell during his life, and after his death, to his wife, Sarah Fell, and after the death of both, the property was to be converted into money and the proceeds invested, so that the same should produce interest, which was to be equally divided between Mrs. Faloon and Mrs. Conner, another daughter of said Fell and wife. There are other details and particulars, which, for the present purpose, need not be set forth.

The property so conveyed is situated in the city of Bloomington, adjoins the residence property of Faloon, and is all the real estate then possessed by said Fell. Thus matters remained for about one year more, when, on the 26th day of May, 1883, the said Fell gave to Faloon a promissory note for $2,500, with a power of attorney to confess a judgment thereon, and soon afterward, as a part of the same transaction, gave him also a quitclaim deed for the property conveyed in the deed of trust to McIntyre, and about the same time Fell and wife again went to live at the house of Faloon.

On the 28th of May, 1883, Faloon took judgment in the Circuit Court of McLean county on the said note of $2,500. Execution was afterward issued on said judgment, and returned *nulla bona*, and this bill is filed for the purpose of removing the said deed of trust out of the way of collecting the said judgment.

This note of $2,500 was made, as alleged by the plaintiff in error, in settlement and satisfaction of the amount alleged to be owing him from Fell for board, etc. It is admitted by Faloon that it was also understood that Fell and wife were to return to the house of Faloon, and be kept and cared for as they had been in former years. We have no doubt the latter was a moving consideration, and probably the essential consid-

eration which operated upon the minds of Fell and wife in making this arrangement.

It appears to have been understood that this note was to be used as the basis upon which the deed of trust was to be avoided or superseded; that Fell had become dissatisfied with the situation, and was induced by Faloon and the arguments which were laid before him to place these instruments in Faloon's hands for this purpose; but that he was mainly influenced by the prospect of future support, seems quite apparent.

Fell is an old man, feeble in body, weak in mind, and his testimony, which appears in this record, is so inconsistent with itself, shows such loss of memory and want of judgment, that we are prepared to believe that when his deposition was taken he was unfit to care for his own affairs; and probably this was so when he gave the note and power of attorney, in May, 1883. At any rate he seems then to have been quite under the influence of Faloon and subject to his control. It is perhaps not remarkable that he was thus influenced considering his age and mental condition, and the kind treatment he had always received at the hands of Faloon and his daughter, Mrs. Faloon.

Whether Faloon in his treatment of the old people was actuated by mercenary motives, as urged by the defendants in error, it is not necessary to determine; but we entertain no doubt the transaction of May, 1883, was planned by Faloon to enable him to lay his hands upon this property, and that the assent of Fell was based upon the consideration and expectation of future support, and that Faloon's rights in the premises are not strengthened in a legal sense by the services he had previously rendered Fell, for the reason, as already stated, that these services were rendered under such circumstances as to preclude a recovery therefor against Fell.

It is urged that the deed of trust was executed at the instance of other members of Fell's family, who were jealous of the influence of Faloon, and that one consideration operating upon the mind of Fell was to place his property beyond the reach of Faloon upon this claim for board, nursing, etc., which he was then supposed to be asserting, but the validity of which was then denied by said Fell. We think the evidence tends

to support this view, and that Fell in making the deed of trust was chiefly, if not wholly, actuated by a desire to secure a support for himself out of the property. It follows then that Fell has made two attempts to secure such support, for, as we have already shown, such is substantially the effect and object of the transaction of May, 1883, and the scope of the present bill is to set aside one of these for the benefit of the other, or that the other may be upheld. A voluntary conveyance for the benefit of the grantor, when it stands in the way of collecting a debt owed by the grantor at the time of the conveyance, may be set aside by bill in chancery, but such a conveyance will not be set aside for the benefit of a subsequent creditor or to support a subsequent voluntary conveyance. It is urged on behalf of Faloon that the *cestuis que trust* under the McIntyre deed are merely volunteers, and it is retorted that his position is no better than theirs in this respect.

It is a familiar maxim that when there is equal equity the law will prevail; that is, in such cases a court of equity will not disturb the legal status of the contending parties, but will leave them in the situation they have made for themselves. We think the equity of the complainant in the present bill is no better than that of the defendants, and that this is a proper case for the application of the maxim just quoted. The decree of the circuit court will therefore be affirmed.

Affirmed.